# United States Tax Court

REVIEWED

165 T.C. No. 9

NORTH WALL HOLDINGS, LLC, SCHULER INVESTMENTS, LLC,
A PARTNER OTHER THAN THE TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 27773-21.                              Filed October 21, 2025.

————————

R mailed a Notice of Final Partnership Administrative Adjustment (FPAA) to the tax matters partner (TMP) of PS, a limited liability company treated as a partnership for federal income tax purposes and subject to the TEFRA unified audit and litigation procedures. P, a notice partner, filed a Petition for readjustment of partnership items 168 days after R mailed the FPAA to the TMP. R moved to dismiss P's Petition for lack of jurisdiction. P objects.

A TMP may file a petition for readjustment within 90 days of R's mailing of an FPAA to the TMP. I.R.C. § 6226(a). A partner or group of partners entitled to notice may file a petition within 60 days after the close of the 90-day TMP petition period. I.R.C. § 6226(b)(1); *see also* I.R.C. § 6231(a)(8) (defining "notice partner"), (11) (defining "5-percent group").

The text, context, and relevant historical treatment of the TEFRA petition period establish that the period within which to file a petition is a jurisdictional limit. The text places the petition period within the jurisdictional grant. I.R.C. § 6226(b)(1), (f). In the context of the broader TEFRA provisions, allowing equitable tolling would render

the TEFRA statutory scheme unworkable. Historically, courts have treated the TEFRA petition deadlines as jurisdictional, and Congress has amended TEFRA to specifically account for the effect of the petition deadlines' being jurisdictional.

Even setting aside the jurisdictional question, the complex TEFRA statutory scheme indicates that Congress did not intend for the equitable tolling doctrine to apply to untimely TEFRA petitions.

*Held*: P's Petition was untimely.

*Held, further*, equitable tolling does not apply to hold open the prescribed periods set forth in I.R.C. § 6226(a) or (b) for filing a TEFRA petition.

BUCH, *J.*, wrote the opinion of the Court, which KERRIGAN, NEGA, PUGH, ASHFORD, COPELAND, GREAVES, WAY, ARBEIT, GUIDER, and JENKINS, *JJ.*, joined in full, and which URDA, *C.J.*, and JONES, TORO, and MARSHALL, *JJ.*, joined as to Part VI.

TORO, *J.*, wrote an opinion concurring in the result, which URDA, *C.J.*, and PUGH, *J.*, joined.

WEILER, *J.*, wrote an opinion concurring in the result.

MARSHALL, *J.*, wrote an opinion concurring in part and dissenting in part.

LANDY and FUNG, *JJ.*, concurred in the result without opinion.

————————

*Michael Todd Welty*, *Andrew W. Steigleder*, *Kevin M. Johnson*, *Lyle B. Press*, *Macdonald A. Norman*, *Merima Mahmutbegovic*, and *David W. Foster*, for petitioner.

*John H.S. Shoemaker*, *David A. Lee*, *Joseph E. Nagy*, *Aaron E. Cook*, and *Tracie M. Knapp*, for respondent.

3

OPINION

BUCH, *Judge*: Before the Court is the Commissioner's Motion to Dismiss for Lack of Jurisdiction, in which the Commissioner asks us to dismiss the Petition filed by Schuler Investments, LLC (Schuler or petitioner), with respect to North Wall Holdings, LLC (North Wall). North Wall is treated as a partnership for federal tax purposes and is subject to the repealed TEFRA[1] unified audit and litigation procedures. The Commissioner argues that we lack jurisdiction because Schuler filed its Petition after the statutory deadline set forth in section 6226(b).[2] Relying on *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493 (2022), Schuler argues that the deadline within which to file a petition under section 6226(b) is not jurisdictional.

The Supreme Court has held that, in determining whether a deadline is jurisdictional, courts must look to the text, context, and relevant historical treatment of the provision at issue. The text of section 6226(b) places the petition deadline in the heart of the jurisdictional grant. Because the surrounding TEFRA provisions become unworkable if the petition deadline is not jurisdictional, the broader context indicates that the petition deadline is jurisdictional. And 40 years of court decisions and congressional amendments have consistently treated the TEFRA petition deadlines as jurisdictional. Further, the complex TEFRA statutory scheme and the disruptive consequences that would result from permitting tolling indicates that Congress did not intend for tolling to apply. Thus, we will grant the Commissioner's Motion to Dismiss.

---

[1] Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71. TEFRA enacted sections 6221–6234. TEFRA was repealed by the Bipartisan Budget Act of 2015 (BBA), Pub. L. No. 114-74, § 1101(a), (g), 129 Stat. 584, 625, 638. However the BBA provisions generally apply to returns filed for partnership taxable years beginning after December 31, 2017. BBA § 1101(g)(1), 129 Stat. at 638. Because the year before the Court precedes this date, TEFRA applies.

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code or I.R.C.), in effect at all relevant times, and regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times. More specifically, any references to sections 6221–6234 are references to the applicable TEFRA provisions.

*Background*

North Wall is an Alabama limited liability company with its principal place of business in Atlanta, Georgia. Schuler is a Georgia limited liability company and a partner[3] of North Wall. Schuler was a notice partner of North Wall for the tax year ending December 31, 2017.

On May 6, 2021, the Internal Revenue Service (IRS) mailed to North Wall's tax matters partner (TMP) a Notice of Final Partnership Administrative Adjustment (FPAA) disallowing a claimed noncash charitable contribution deduction of $45,800,000 for 2017 and determining the applicability of penalties under sections 6662A and 6662(c)–(e) and (h).[4] The Commissioner sent both a notice addressed to a named TMP and a "generic" notice addressed to "Tax Matters Partner," to two different addresses.

On June 1, 2021, the Commissioner mailed copies of the FPAA to other partners, including Schuler. The copy appended to the Petition bears a heading with several items of information.[5] It is dated June 1, 2021. Below that date, it identifies the partnership and the year of adjustment, and it provides information for contacting the IRS. That heading ends by providing the date the FPAA was mailed to the TMP, stating: "Date FPAA mailed to tax matters partner: 05-06-2021." That same document includes a section with a bold heading, "If you don't agree with the adjustments," describing the process for filing a petition to challenge the Commissioner's adjustments. Under that heading it states: "If the TMP doesn't file a petition by the 90th day from the date we mailed the FPAA, any partner entitled to receive this letter, or any 5 percent group, can petition" various courts. The document continues:

---

[3] For TEFRA purposes, a partnership is any entity required to file a partnership return under section 6031(a), and a partner is any partner or any other person whose income tax liability is affected by taking into account partnership items. I.R.C. § 6231(a)(1) and (2).

[4] The Commissioner mailed two notices to the TMP. One was addressed to "Ornstein-Schuler, LLC, Tax Matters Partner, North Wall Holdings, LLC." The other was a "generic FPAA" mailed to "Tax Matters Partner, North Wall Holdings, LLC." A generic FPAA satisfies the TEFRA notice requirements and is sufficient to begin the running of the petition period under section 6226. *Chomp Assocs. v. Commissioner*, 91 T.C. 1069, 1074 (1988).

[5] The copy appended to the Petition in this case is not addressed to Schuler. The Commissioner provided a certified mail list showing an FPAA having been mailed to Schuler at the same address Schuler provided in its Petition. The parties do not dispute that the Commissioner mailed an FPAA to Schuler.

"The group or a partner must file the petition after the 90th day, but on or before the 150th day from the date we mailed the FPAA to the TMP."

North Wall's TMP did not file a petition challenging the FPAA within 90 days of the Commissioner's mailing of the FPAA or at any other time.

Schuler, in its capacity as a notice partner, filed its Petition on October 21, 2021. The Petition states: "The Internal Revenue Service located in Ogden, Utah issued an FPAA relating to the Partnership's 2017 taxable year on June 1, 2021." It makes no reference to the date the FPAA was mailed to the TMP. The Petition was electronically filed 168 days after the FPAA was mailed to the TMP, i.e., 18 days after the expiration of the 150-day period referenced in the FPAA. But the Petition affirmatively alleges: "Petitioner is filing this Petition within the 150-day period set forth in Section 6226(b) in its capacity as a Notice Partner of North Wall." Schuler does not allege in its Petition that equitable tolling applies, and it does not allege facts in support of equitable tolling in any pleading.

The Commissioner timely answered and later filed a Motion to Dismiss for Lack of Jurisdiction on the ground that Schuler's Petition was untimely. Schuler objects, arguing that the deadline within which to file a petition from an FPAA is not jurisdictional.

*Discussion*

Partnerships are passthrough entities and, as such, are not responsible for paying federal income tax. I.R.C. § 701. Instead, the partners report their shares of items flowing from the partnership on their own income tax returns. *Id.* Although partnerships do not calculate and report an income tax liability, they are nonetheless required to file Form 1065, U.S. Return of Partnership Income. I.R.C. § 6031(a). On that return, a partnership generally reports the partnership's aggregate and each partner's share of items of income, gain, loss, deduction, and credit, along with other information. The partnership reports information with respect to the partners on Schedules K–1, Partner's Share of Income, Deductions, Credits, etc. Partnerships can have as few as two or as many as tens of thousands of partners.

Traditional deficiency procedures created difficulties with respect to examining partnership returns and assessing tax resulting from any adjustments that might result from an examination. Under traditional procedures, if the Commissioner determines a deficiency in tax, the

Commissioner must mail a Notice of Deficiency to a taxpayer. *See* I.R.C. § 6212. But because a partnership does not have an income tax liability, it cannot have a deficiency in income tax, and the Commissioner cannot issue a Notice of Deficiency to the entity for income tax. Instead, absent a separate set of procedures, the Commissioner would be required to determine deficiencies in income tax partner by partner and mail a separate Notice of Deficiency to each partner. Some partners might petition the Tax Court. *See* I.R.C. § 6213. Others might pay the tax, file a refund claim, and file a refund suit. *See* I.R.C. § 7422(a). And yet others might simply agree to the deficiency or default and allow assessment. Thus, in addition to the administrative burden, applying traditional deficiency procedures to partnerships could lead to inconsistent results.

I.  *TEFRA Overview*

To address the many procedural issues that are unique to partnerships,[6] Congress enacted TEFRA's unified audit and litigation procedures in 1982 to alleviate the administrative burden caused by duplicative audits and litigation. *Samueli v. Commissioner*, 132 T.C. 336, 340 (2009). A goal of TEFRA was to "promote increased compliance and more efficient administration of the tax laws." H.R. Rep. No. 97-760, at 600 (1982) (Conf. Rep.), *as reprinted in* 1982-2 C.B. 600, 662.

Section 6221 provides that the tax treatment of all "partnership item[s]" is determined at the partnership level.[7] Rather than mail a Notice of Deficiency to each partner, once the Commissioner makes partnership-level determinations, he must mail an FPAA to the TMP.

---

[6] Beyond those already described, there are myriad issues that create complications in the examination and litigation of income tax issues with respect to passthrough entities. These issues include, for example, identifying indirect partners in a tiered structure, *see* I.R.C. § 6231(a)(10), different partners' having different limitations periods, *see, e.g.*, I.R.C. § 6229; *Rhone-Poulenc Surfactants & Specialties L.P. v. Commissioner*, 114 T.C. 533 (2000), or the effect of bankruptcy of a partner or partnership on an ongoing tax dispute, *see 1983 W. Rsrv. Oil & Gas Co. v. Commissioner*, 95 T.C. 51, 57 (1990), *aff'd*, 995 F.2d 235 (9th Cir. 1993) (unpublished table decision); Treas. Reg. § 301.6231(c)-7.

[7] "Partnership item[s]" include "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." I.R.C. § 6231(a)(3). By regulation, the Commissioner defined partnership items to include not only items of income, gain, loss, deduction, and credit, such as those identified in section 702(a), but also myriad items that underlie the ultimate tax reporting of those items. *See* Treas. Reg. § 301.6231(a)(3)-1.

I.R.C. § 6223(a)(2). Within 60 days of mailing that notice, the Commissioner must also mail copies of the FPAA to each "notice partner" and "5-percent group."[8] I.R.C. §§ 6231(a)(8), (11), 6223(a), (b)(2), (d)(2).

Litigating the adjustments in an FPAA is coordinated so that all partners are consolidated into a single proceeding. The TMP may file a petition challenging the Commissioner's adjustments within 90 days. I.R.C. § 6226(a). And the TMP may file that petition with the Tax Court, the appropriate U.S. district court, or the Court of Federal Claims. *Id.* If the TMP files a petition within that 90-day period, then no other partner may file a petition. I.R.C. § 6226(b)(1); *Cablevision of Conn. v. Commissioner*, T.C. Memo. 1993-106. But if the TMP does not file a petition during that 90-day period, then any notice partner or 5-percent group may file a petition with any of those courts during the 60 days after the close of the 90-day period. I.R.C. § 6226(b)(1).

Once a court proceeding is brought, all partners are treated as parties to the action. I.R.C. § 6226(c). This includes both direct and indirect partners. I.R.C. § 6231(a)(2). In contrast, any person who no longer has an interest in the proceeding, such as a partner who has filed for bankruptcy, is not treated as a party. I.R.C. §§ 6226(d), 6231(b); *see, e.g.*, Treas. Reg. § 301.6231(c)-7. Absent one of the narrow exceptions applying, any person who was a partner in the partnership during the taxable year is treated as a party to the court proceeding and is bound by its outcome. I.R.C. § 6226(c)(1).

The act of filing a petition by any partner does more than initiate a court proceeding binding all partners. If a proceeding is initiated during either the 90- or 60-day petition period, the Commissioner is prohibited from assessing any tax that might result from his adjustments until that proceeding becomes final. I.R.C. § 6225(a). Likewise, certainty as to which proceeding moves forward is

---

[8] For partnerships with more than 100 partners, the Commissioner is required to mail direct notice only to partners holding at least a one percent interest. I.R.C. § 6223(b)(1). Partners entitled to direct notice from the Commissioner are "notice partner[s]." I.R.C. § 6231(a)(8). Other partners may opt to receive notice by forming a 5-percent notice group, and the Commissioner must provide direct notice to a designate of that group. I.R.C. §§ 6223(b)(2), 6231(a)(11). The TMP is required to notify any partner who is not otherwise entitled to direct notice from the Commissioner. Treas. Reg. § 301.6223(g)-1(a)(2). Any passthrough partner is required to provide notice to partners who own their interests indirectly through it. I.R.C. § 6223(h); Treas. Reg. § 301.6223(h)-1(a).

consequential. If the proceeding that moves forward is one brought in U.S. district court or the Court of Federal Claims, the petitioning partner must make a jurisdictional deposit. I.R.C. § 6226(e). And the prohibition against assessment does not apply. *See* I.R.C. § 6225(a)(2) (restricting assessment only if a petition is filed in the Tax Court).

Once the TEFRA proceeding has concluded, the Commissioner may assess tax by making a computational adjustment. I.R.C. § 6231(a)(6). This requires that the Commissioner complete computations and make assessments for all partners within the period during which the statute of limitations is tolled by the issuance of the FPAA. *See* I.R.C. § 6229(d)(1) (tolling the period of limitation for the period during which a TEFRA petition may be filed and for one year thereafter). Although deficiency procedures generally do not apply to assessments following TEFRA proceedings, the Commissioner may be required to issue Notices of Deficiency to assess tax when further factual determinations are required at the partner level. I.R.C. § 6230(a)(2); *see also N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 744 (1987).

## II. *TEFRA Petition Deadlines*

Since its original enactment, the aforementioned TEFRA petition deadlines coordinated to resolve jurisdictional questions. For example, as TEFRA was originally enacted, if a notice partner filed a petition during the 90-day TMP petition period, that petition was "premature" and the Court lacked jurisdiction. *See, e.g.*, *Mishawaka Props. Co. v. Commissioner*, 100 T.C. 353, 362 (1993); *PAE Enters. v. Commissioner*, T.C. Memo. 1988-222. Congress amended section 6226 in 1997 to provide that premature petitions would be deemed to be filed on the last day of the 60-day filing period, but only if no other timely petition was filed. I.R.C. § 6226(b)(5); Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1240(a), 111 Stat. 788, 1028–29. A similar issue arose with respect to petitions filed by TMPs after the close of the 90-day petition period that is exclusive to TMPs. In such a situation, the Court lacks jurisdiction under section 6226(a) (the TMP petition provision). The Court may nonetheless have jurisdiction under section 6226(b), but only if the TMP also meets the definition of a notice partner. *Barbados #6 Ltd. v. Commissioner*, 85 T.C. 900 (1985).

Taken together, these petition deadlines coordinate to ensure that there is only one partnership-level proceeding and that, with limited exceptions, all partners are bound by that proceeding. As already

discussed, if a TMP has filed a timely petition, no other petition may be filed. If no TMP petition is filed, any partner entitled to notice may file a petition in the Tax Court, the applicable U.S. district court, or the Court of Federal Claims during the subsequent 60 days. I.R.C. § 6226(b)(1). If a petition is filed in the Tax Court and another court, the Tax Court proceeding takes priority regardless of which petition was filed first. I.R.C. § 6226(b)(2). If multiple petitions are filed outside of the Tax Court, the first petition moves forward, and the others must be dismissed. I.R.C. § 6226(b)(3). If multiple petitions are filed in the Tax Court, the Court dismisses the latest in time. *See, e.g., Comput. Programs Lambda, Ltd. v. Commissioner*, 89 T.C. 198, 207 (1987). In short, whenever multiple proceedings are initiated, every proceeding other than the one that takes priority "shall be dismissed." I.R.C. § 6226(b)(4).

III.    *Jurisdictional Versus Claims Processing Rules*

If a federal court's subject-matter jurisdiction depends on the timely filing of a complaint or petition, "a litigant's failure to comply with the bar deprives a court of all authority to hear a case." *United States v. Wong*, 575 U.S. 402, 408–09 (2015). Courts must enforce the deadline sua sponte; the deadline cannot be tolled or waived; and there is no room for equitable exceptions to be made on account of the specific facts of a case. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Late-filed cases in such instances must be dismissed for lack of jurisdiction. *Id.*

Claims processing rules, on the other hand, are those that "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). The failure to meet a claims processing rule "do[es] not deprive a court of authority to hear a case." *Wong*, 575 U.S. at 410. "Filing deadlines . . . are quintessential claim-processing rules." *Henderson*, 562 U.S. at 435. They "ordinarily are not jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013). This is true "even when the time limit is important . . . and even when it is framed in mandatory terms." *Wong*, 575 U.S. at 410. Deadlines that are claim-processing rules are subject to the rebuttable presumption that they may be equitably tolled upon the particular facts of a case. *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95–96 (1990). A litigant's failure to meet the deadline risks dismissal for failure to state a claim. *See Arbaugh*, 546 U.S. at 511–13. But untimeliness generally

must be raised in an answer (or amended answer), or the issue may be waived. *See Kontrick v. Ryan*, 540 U.S. 443, 459 (2004).

Beginning in the early 2000s, the Supreme Court endeavored to "bring some discipline" to the use of the jurisdictional label. *See Henderson*, 562 U.S. at 435 (first citing *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161–62 (2010); and then citing *Kontrick*, 540 U.S. at 455). It perceived a problem with "drive-by jurisdictional rulings." *See Arbaugh*, 546 U.S. at 511 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998)). It has instructed that "[c]larity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Kontrick*, 540 U.S. at 455. We must decide whether the petition deadlines of section 6226, enacted in 1982, provide jurisdictional limits or claims processing rules.

IV.    *The Clear Statement Rule*

"Only Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick*, 540 U.S. at 452 (citing U.S. Const. art. III, § 1). "Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them." *Bowles v. Russell*, 551 U.S. 205, 212–13 (2007). "Congress is free to attach the conditions that go with the jurisdictional label to . . . a claim-processing rule." *Henderson*, 562 U.S. at 435. "[I]t is no less 'jurisdictional' when Congress prohibits federal courts from adjudicating an otherwise legitimate 'class of cases' after a certain period has elapsed . . . ." *Bowles*, 551 U.S. at 213.

However, Congress must "clearly state[]" that a filing deadline is jurisdictional; and absent such a clear statement, "courts should treat the restriction as nonjurisdictional in character." *Arbaugh*, 546 U.S. at 515–16. "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it." *Wong*, 575 U.S. at 410. But Congress "need not use magic words." *Henderson*, 562 U.S. at 436. A statutory deadline may be jurisdictional even without using the word "jurisdiction." *See, e.g.*, *Bowles*, 551 U.S. at 208–10 (holding 28 U.S.C. § 2107(a) and (c) to be jurisdictional); *United States v. Brockamp*, 519 U.S. 347, 350–51 (1997) (holding section 6511 to be jurisdictional). But the "traditional tools of statutory construction must plainly show that

Congress imbued a procedural bar with jurisdictional consequences." *Wong*, 575 U.S. at 410.

"To determine whether Congress has made the necessary clear statement, we examine the 'text, context, and relevant historical treatment' of the provision at issue." *Musacchio v. United States*, 577 U.S. 237, 246 (2016) (quoting *Reed Elsevier*, 559 U.S. at 166). Statutes that provide jurisdictional deadlines share several qualities: They speak of a court's power "in jurisdictional terms or refer in any way to the jurisdiction" of the court. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982). They "define a federal court's jurisdiction . . . , address its authority to hear untimely suits, [and] cabin its usual equitable powers." *Wong*, 575 U.S. at 411. Their context, such as placement within their statutory regime, history of reenactments, or a long-standing judicial interpretation, reflects that Congress imbued a deadline with "jurisdictional consequences." *See, e.g.*, *id.* at 410; *Henderson*, 562 U.S. at 439; *Bowles*, 551 U.S. at 209–13; *Zipes*, 455 U.S. at 394.

In the tax area specifically, the Supreme Court has twice considered whether a particular deadline is subject to equitable tolling. In *Brockamp*, 519 U.S. at 354, the Supreme Court considered whether the deadline by which to file a refund claim is subject to equitable tolling, concluding that Congress did not intend for equitable tolling to apply to the deadline for filing claims for refund. In *Boechler*, the Supreme Court considered whether the deadline by which to file a petition challenging a collection determination by the Commissioner is subject to equitable tolling, concluding that it is. In so holding, the Supreme Court discussed *Brockamp* and emphasized the distinctive features of the refund deadline that led to differing conclusions, writing:

> Congress wrote the [refund] time limit in "unusually emphatic form," and its "detailed technical" language "c[ould not] easily be read as containing implicit exceptions." *Id.*, at 350. The statute also "reiterate[d]" the deadline "several times in several different ways." *Id.*, at 351. And the statute "explicit[ly] list[ed]" numerous (six) exceptions to the deadline. *Id.*, at 352. The "nature of the underlying subject matter—tax collection—underscore[d] the linguistic point." *Ibid.* That was because of the "administrative problem" of allowing equitable tolling when the "IRS processe[d] more than 200 million tax returns" and "issue[d] more than 90 million refunds" each year. *Ibid.*

*Boechler, P.C. v. Commissioner*, 142 S Ct. at 1500–01 (citing *Brockamp*, 519 U.S. at 350–52).

V.     *TEFRA Jurisdictional Limit*

The multiple petition deadlines within section 6226 coordinate so as to make a clear statement that the deadlines are jurisdictional.

A.     *The TEFRA Jurisdictional Grant*

The Tax Court may exercise jurisdiction only to the extent expressly provided by statute. *Breman v. Commissioner*, 66 T.C. 61, 66 (1976). Section 7442 alone does not vest the Tax Court with any jurisdiction. *Hallmark Rsch. Collective v. Commissioner*, 159 T.C. 126, 136 (2022). Section 6226 grants the Tax Court, the appropriate U.S. district court, and the Court of Federal Claims, the authority to redetermine adjustments of partnership items. And section 6226(a) and (b) imposes separate, but complementary, jurisdictional prerequisites. Upon close examination, all of those prerequisites relate to timing. Taken as a whole, considering the separate but complementary petition deadlines of section 6226(a) and (b) plus the various codified exceptions, TEFRA "sets forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions." *Brockamp*, 519 U.S. at 350.

B.     *Prerequisites for All TEFRA Petitions*

Section 6226(a) and (b) requires the issuance of a valid FPAA for the Court to have jurisdiction over a readjustment proceeding. Under section 6226(a), a petition for readjustment may be filed only "[w]ithin 90 days *after* the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner." (Emphasis added.) And a petition may be filed under section 6226(b) only "within 60 days after the close of the 90-day period."

"The FPAA is the jurisdictional notice that permits a partner to file a petition challenging the IRS' adjustments." *Taurus FX Partners, LLC v. Commissioner*, T.C. Memo. 2013-168, at *7. "The FPAA is to the litigation of partnership items the equivalent of the statutory notice of deficiency in other cases." *Sirrine Bldg. No. 1 v. Commissioner*, T.C. Memo. 1995-185, 1995 WL 232791, at *3, *aff'd*, 117 F.3d 1417 (5th Cir. 1997) (unpublished table decision). Both the Notice of Deficiency and the FPAA serve as prerequisites to filing a petition with the Tax Court. *Compare* I.R.C. § 6226, *with* I.R.C. § 6213. And both sections 6213(a)

and 6226(a) and (b) include the requirement of a jurisdictional notice in the same sentence as (and thus "linked" to) the petition periods for their respective petitions. *See Hallmark*, 159 T.C. at 139–40.

Requiring an FPAA before a petition can be filed is the first of several timing requirements built into the TEFRA jurisdictional rules, and it applies to all petitions in TEFRA cases. A petition may not be filed before the Commissioner mails an FPAA to the TMP. I.R.C. § 6226(a). This timing requirement in section 6226(a) permits a petition only "after the day on which a notice of final partnership administrative adjustment is mailed to the tax matters partner."

C.      *Prerequisites for Section 6226(a) Petitions*

For the Court to have jurisdiction over a petition filed under section 6226(a), two additional requirements must be met. As already stated, the Commissioner must have issued a valid FPAA. In addition, it is well established that a petition under section 6226(a) must be filed by the TMP. I.R.C. § 6226(a); *Mishawaka Props.*, 100 T.C. at 362; *PAE Enters.*, T.C. Memo. 1988-222. And a TMP-filed petition must be filed within 90 days of when the Commissioner mailed the FPAA to the TMP. I.R.C. § 6226(a). Upon closer examination, both of these additional requirements also relate to the timing for filing a petition.

Of course, the explicitly stated 90-day period within which to file the petition under section 6226(a) is a timing requirement. The Court has previously held that it lacks jurisdiction under section 6226(a) over a petition filed by a TMP beyond the 90-day period. *Barbados #6*, 85 T.C. at 906. The Court may nonetheless have jurisdiction over a petition filed by a TMP outside that 90-day period, but only if the TMP also qualifies as a notice partner and jurisdiction would be pursuant to section 6226(b). *Id.*

The requirement that a section 6226(a) petition be filed by the TMP operates as a timing requirement as to other partners. Before the statute was amended, a petition filed by a partner other than the TMP during the exclusive TMP petition period was dismissed as premature. And that dismissal was for lack of jurisdiction. *See, e.g., Sierra Design Rsch. & Dev. Ltd. P'ship v. Commissioner*, T.C. Memo. 1989-506 (dismissing multiple premature petitions for lack of jurisdiction). Even after Congress's amendment, the Court lacks jurisdiction over a premature petition unless no other timely petition is filed. I.R.C. § 6226(b)(5). The requirement that only the TMP can file a petition in

the first 90 days after issuance of an FPAA amounts to a timing requirement as to all other partners because the Court lacks jurisdiction over a petition prematurely filed by a partner other than the tax matters partner even though the Court might have jurisdiction over that same petition if it was filed during the subsequent section 6226(b) petition period.[9]

The Congressional response to the dismissal of premature petitions shows its awareness of the Court's treating the petition periods as jurisdictional. Before the enactment of section 6226(b)(5), the filing of a premature petition regularly led to the Court's dismissing it for lack of jurisdiction. *See, e.g.*, *Transpac Drilling Venture 1982-22 v. Commissioner*, 87 T.C. 874, 876 (1986) (finding premature petition "ineffective to commence a partnership action"); *Transpac Drilling Venture 1983-63 v. United States*, 16 F.3d 383, 390 (Fed. Cir. 1994) (affirming dismissal of a premature petition for lack of jurisdiction). In 1997, Congress recognized that under then-existing law, dismissal occurs when petitions were filed during the incorrect period.

> The Tax Matters Partner is given the exclusive right to file a petition for a readjustment of partnership items within the 90-day period after the issuance of the notice of a final partnership administrative adjustment (FPAA). If the Tax Matters Partner does not file a petition within the 90-day period, certain other partners are permitted to file a petition within the 60-day period after the close of the 90-day period. There are ordering rules for determining which action goes forward and for dismissing other actions.

H.R. Rep. No. 105-220, at 686 (1997) (Conf. Rep.), *reprinted in* 1994-4 C.B. (Vol. 2) 1457, 2156. To remedy this, Congress enacted section

---

[9] In *Brockamp*, the Supreme Court found noteworthy the fact that the statute setting forth the deadline at issue also "sets forth explicit exceptions to its basic time limits." *Brockamp*, 519 U.S. at 351. With TEFRA, the premature petition provision is just one such exception. There is an additional exception for partners who are not sent timely notice by the Commissioner. *See* I.R.C. § 6223(e). In that and other situations, the Code removes the partner from the partnership-level proceeding and permits such partner to proceed independently through a partner-level proceeding. The Code and the regulations also provide other circumstances in which a partner proceeds separately because of unique, partner-specific circumstances. These circumstances include, but are not limited to, when a partner requests prompt assessment, when a partner is subject to criminal investigation, or when a partner is a debtor in bankruptcy. *See* I.R.C. § 6231(c); Treas. Reg. §§ 301.6231(c)-4 through -8. In each situation, the petition deadlines of section 6226(a) and (b) no longer apply.

6226(b)(5), providing relief for what Congress dubbed "premature petitions," a name denoting the significance of the timing requirements. Taxpayer Relief Act of 1997 § 1240(a). Under new section 6226(b)(5), a premature petition (i.e., one filed by a partner other than the TMP during the exclusive period for petitioning by a TMP) is deemed to be filed at the close of the 60-day petition period for petitions by partners other than the TMP, but only if no other valid petition is filed.

We previously observed in *Hallmark* that congressional history may shed light on the jurisdictional nature of a statute. We observed: "Over nearly a hundred years of reenactments and amendments of section 6213(a), Congress has left substantially unchanged the wording of its jurisdictional grant, and Congress's additions to section 6213(a) have clarified that its deadline is jurisdictional." *Hallmark*, 159 T.C. at 154. Although TEFRA, having been enacted in 1982, lacks 100 years of reenactments and amendments, the only amendment to section 6226 that relates to the time within which to file a petition acknowledges that, absent amendment, a petition filed outside the statutorily prescribed timeframe would be subject to a jurisdictional dismissal. If the Tax Court had the power to use equitable principles to address a petition filed outside the appropriate time period, Congress's amendment would have been unnecessary. But Congress recognized that the Tax Court does not have the power to alter the petition periods imposed by section 6226(a) and (b). Thus, Congress, through this amendment, recognized those petition periods as jurisdictional.

For nearly 40 years, courts have recognized the TEFRA petition deadlines as jurisdictional. For example, in *Utah Bioresearch 1984, Ltd. v. Commissioner*, T.C. Memo. 1989-612, this Court dismissed a TEFRA case for lack of jurisdiction because the petition was not timely filed under either section 6226(a) or (b). Such dismissals have been upheld on appeal. For example, in *Stone Canyon Partners v. Commissioner*, T.C. Memo. 2007-377, *aff'd sub nom. Bedrosian v. Commissioner*, 358 F. App'x 868 (9th Cir. 2009), this Court dismissed a TEFRA case for lack of jurisdiction because the petition was untimely. On appeal, the U.S. Court of Appeals for the Ninth Circuit specifically "affirm[ed] the Tax Court's dismissal for lack of jurisdiction of the[] untimely petition." *Bedrosian*, 358 F. App'x at 869.

More recently, the U.S. Court of Appeals for the Fifth Circuit held that the petition deadlines of section 6226 are jurisdictional and explicitly rejected equitable tolling. *See A.I.M. Controls, L.L.C. v. Commissioner*, 672 F.3d 390 (5th Cir. 2012). In that case, the

Commissioner issued an FPAA in August 2008. A complaint challenging the FPAA was filed in U.S. district court within 90 days of the Commissioner's issuance of the FPAA. But that petition was not accompanied by the requisite jurisdictional deposit. *See* I.R.C. § 6226(e). After that complaint was dismissed, an untimely petition was filed in the Tax Court. This Court dismissed the case for lack of jurisdiction by order. Applying Supreme Court precedent on the question of when procedural rules such as the TEFRA filing period should be considered jurisdictional requirements, the Fifth Circuit concluded that "[s]ection 6226's terms convince us that § 6226's filing period is jurisdictional" and "we have no authority to alter it." *A.I.M. Controls, L.L.C. v. Commissioner*, 672 F.3d at 395.

And most recently, the U.S. Court of Appeals for the Ninth Circuit likewise held that the petition deadlines of section 6226(a) and (b) are jurisdictional. *SNJ Ltd. v. Commissioner*, 28 F.4th 936 (9th Cir. 2022). In its analysis in that case, the Ninth Circuit focused on section 6226(f), which provides:

> A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

In focusing on this provision, the Ninth Circuit observed that the filing deadline (such as the deadlines in section 6226(a) and (b)) and the indication that such deadline is jurisdictional need not be in the same subsection of the Code. *SNJ Ltd. v. Commissioner*, 28 F.4th at 947. It held that section 6226(f) "does link the filing deadline to a grant of jurisdiction." *SNJ Ltd. v. Commissioner*, 28 F.4th at 947. From this observation, it concluded that the TEFRA petition deadlines are jurisdictional. *Id.*

### D.     *Prerequisites for Section 6226(b) Petitions*

Like section 6226(a), section 6226(b) provides multiple requirements to invoke a court's jurisdiction to readjust partnership items. Both provisions require the Commissioner to have mailed an FPAA to the TMP. And like section 6226(a), section 6226(b) authorizes

only specific types of partners to file a petition: notice partners and 5-percent groups. Most importantly for purposes of the present discussion, section 6226(b), like section 6226(a), establishes a window of time within which to file. Specifically, a notice partner or a 5-percent group "may, within 60 days after the close of the 90-day period set forth in subsection (a), file a petition." I.R.C. § 6226(b)(1). When considering where the timing requirement fits within the statutory scheme, it is notable that the timing requirement of section 6226(b) is found between the words "may" and "file." *See Bowles*, 551 U.S. at 212–13 ("Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them.").

### E.   *TEFRA Administrability*

Allowing equitable tolling to alter the periods within which to file a TEFRA petition would create serious administrative problems. In *Brockamp*, 519 U.S. at 352–53, the Supreme Court acknowledged that reading an equitable tolling exception into section 6511 would create "serious administrative problems" by forcing the IRS to "respond to, and perhaps litigate, large numbers of late claims, accompanied by requests for 'equitable tolling' which, upon close inspection, might turn out to lack sufficient equitable justification." Because of the "nature and potential magnitude of the administrative problem," the Supreme Court reasoned "that Congress decided to pay the price of occasional unfairness in individual cases . . . in order to maintain a more workable tax enforcement system." *Brockamp*, 519 U.S. at 352–53.

These problems are magnified in TEFRA proceedings because the proceedings affect multiple parties, ranging from two to thousands. Thus, allowing equitable tolling because of one party's circumstances would affect multiple parties.

### 1.   *Nullifying the Petition Coordination Provisions*

Treating the TEFRA petition deadlines as nonjurisdictional would nullify Congress's finely tuned coordination provisions. As previously discussed, TEFRA establishes a series of coordinated petition deadlines with specific consequences for petitions filed outside their applicable periods. TMP petitions filed during the first 90 days after an FPAA is issued take priority over later filed notice partner petitions. I.R.C. § 6226(a). This has the effect of providing the TMP the opportunity to control key aspects of litigation such as forum selection.

Timely notice partner petitions take priority over premature notice partner petitions. I.R.C. § 6226(b)(1), (5). As for equitable solutions for filing a petition outside of the congressionally created periods, Congress addressed a potentially inequitable situation by allowing premature petitions to be treated as timely if no other petition is filed. I.R.C. § 6226(b)(5). It did so long after the Court had dismissed untimely petitions for lack of jurisdiction. Congress chose to enact a remedy for premature petitions but not for late petitions.

Equitable tolling could result in an untimely petition in the Tax Court divesting another court of jurisdiction. When challenging an FPAA, the petitioning partner may file a petition in the Tax Court, U.S. district court, or the Court of Federal Claims. I.R.C. § 6226(a) and (b)(1). In the case of a notice partner or 5-percent group petition, section 6226(b)(2) prioritizes Tax Court petitions over petitions filed in any other court. It provides: "If more than 1 action is brought under paragraph (1) with respect to any partnership for any partnership taxable year, the first such action *brought in the Tax Court* shall go forward." I.R.C. § 6226(b)(2) (emphasis added). Other than by cross-reference to paragraph (1), this priority provision is not limited to timely petitions. Thus, if equitable tolling applies to paragraph (1) to allow the Tax Court to take jurisdiction over an otherwise untimely petition, the Tax Court could do so notwithstanding a timely petition in another court. Because the priority provision is not limited to timely petitions, an untimely petition to the Tax Court allowed by equitable tolling would, by statute, result in divesting any other court of jurisdiction.

### 2.     *Disrupting the Assessment Process*

Equitable tolling of the TEFRA petition deadline would make the process for assessment and collection of deficiencies resulting from a TEFRA proceeding unworkable. As previously described, a TEFRA proceeding does not redetermine income tax liabilities; it readjusts adjustments to partnership items. The Commissioner is prohibited from assessing tax attributable to partnership items until the conclusion of a TEFRA proceeding, whether as a result of the petition period passing without the filing of a petition or, if a petition is filed, after a final decision. I.R.C. § 6225(a). Once either of those events occurs, the Commissioner must turn partnership-level adjustments into partner-level assessments. *See* I.R.C. §§ 6231(a)(6), 6230(a)(2)(A)(i).

This process for turning partnership-level adjustments into partner-level assessments requires allocating the partnership-level

adjustments among the partners, who may number in the thousands. The tax effect of those adjustments must then be computed partner by partner. This process begins either after the petition periods expire with no petitions having been filed or after a decision of the Court if a petition is filed.

Making partner-level assessments occurs through two potential mechanisms. For tax that can be computed without regard to partner-level determinations, the Commissioner can make a computational adjustment, computing and assessing the tax effect of the partnership-level adjustments. I.R.C. § 6231(a)(6). If the amount of tax cannot be computed without regard to partner-level determinations, the Commissioner must issue Notices of Deficiency. I.R.C. § 6230(a)(2)(A)(i); *N.C.F. Energy Partners*, 89 T.C. at 744.

Because of the complexity in reducing partnership-level adjustments to partner-level assessments, the period of limitation is extended to allow time for this process. But that extended period is not without limit. Once the period within which to file a petition has lapsed (or a decision is final, if a petition is filed), the Commissioner has one year to complete the computations and issue a computational adjustment or an affected item Notice of Deficiency to each partner. I.R.C. § 6229(d).

Allowing untimely petitions would upend this assessment process. If a timely petition is not filed, the restrictions on assessment are lifted and the Commissioner initiates the process for making partner-level assessments. I.R.C. § 6225(a)(2). But those restrictions on assessment do not remain in place in the event of an untimely petition. *Id.*

Confronted with such a situation, the Commissioner is faced with one of two alternatives: continue with or halt the assessment process. Both present administrative problems that do not arise if the petition deadline is jurisdictional.

Continuing with the assessment process creates multiple administrative problems. If the Commissioner proceeds and assesses liabilities notwithstanding an active (but untimely) challenge in the Tax Court, the partners cannot halt assessment. If a petition is filed in the Tax Court, section 6225(b) generally allows the Tax Court to enjoin assessment while that proceeding is ongoing. But that power is limited to situations in which the petition was timely: "The Tax Court shall have

no jurisdiction to enjoin any action or proceeding under this subsection unless a *timely* petition for a readjustment of the partnership items for the taxable year has been filed . . . ." *Id.* (emphasis added). Thus, the Commissioner would be permitted to continue with assessment (and collection) notwithstanding an active Tax Court case.

Then there is the possibility of a decision that conflicts with assessments that have already been computed. If the Commissioner were to proceed with assessment while the Tax Court took jurisdiction over an untimely petition, the ultimate result of the Tax Court case might differ from what the Commissioner had determined in the FPAA. The result would be a recomputation of the computational adjustments and affected item Notices of Deficiency that may have already been issued.[10]

The Commissioner is arguably placed in a more perilous position if he does not assess. No court has addressed the applicability of the suspension of the period of limitation under section 6229(d) in the case of an untimely petition. The Commissioner would likely assess to avoid a potential ruling that the suspension provision does not apply. And if the Commissioner were to delay assessment, such a delay would carry with it the increased chance that the liability would become uncollectable.

### 3. *Treating All Parties as Parties*

Whatever complications might result from allowing equitable tolling are not limited to the Commissioner and the partner seeking equitable tolling; they affect all partners. Section 6226(c)(1) requires that "each person who was a partner in such partnership at any time during such year shall be treated as a party to such action."[11] Thus, any

---

[10] Further, in the case of affected item Notices of Deficiency, it is possible that those may have been petitioned to the Tax Court. The result could be the staying of partner-level cases while an otherwise untimely partnership-level case proceeds. Alternatively, it could call into question the validity of an affected item Notice of Deficiency as premature and result in dismissal.

[11] Notably, Congress created an exception to treating all partners as parties to address the potentially inequitable situation in which the Commissioner does not provide proper notice to a partner. *See* I.R.C. § 6223(e). Depending on the specific circumstances, the partner who was not provided proper notice may choose to be bound by the TEFRA proceeding or may choose not to be bound and to resolve matters with the Commissioner independently. *Id.*

one partner's claim for equitable tolling would result in all partners' being parties to any resulting action.

Such a claim would provide an opportunity for gamesmanship. A partnership with thousands of partners need seek out only one partner who might present circumstances meriting equitable tolling. The result would be that all partners would be the beneficiaries of equitable tolling though it be merited by only one partner.

Subjecting section 6226(b) to equitable tolling would upend partnership collections subject to TEFRA and allow partners whose circumstances would not warrant equitable tolling to circumvent the rules of section 6226.

VI.   *Equitable Tolling*

Even setting aside the question of jurisdiction, the complexity of the TEFRA provisions leaves no room for equitable tolling of the petition deadlines in section 6226. The Supreme Court in *Boechler* and other cases treated the question of jurisdiction and availability of equitable tolling as separate questions. *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500 ("Of course, the nonjurisdictional nature of the filing deadline does not help Boechler unless the deadline can be equitably tolled."). This is so because "[t]he mere fact that a time limit lacks jurisdictional force, however, does not render it malleable in every respect." *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192 (2019). A nonjurisdictional deadline is entitled to a rebuttable presumption in favor of equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645–46 (2010) (citing *Irwin*, 498 U.S. at 95–96). But as the Supreme Court has cautioned, "[t]he *Irwin* presumption, however, is just that—a presumption." *Arellano v. McDonough*, 143 S. Ct. 543, 547 (2023).

The presumption in favor of equitable tolling is rebutted "if 'there [is] good reason to believe that Congress did *not* want the equitable tolling doctrine to apply.'" *Id.* at 548 (alteration in original) (quoting *Brockamp*, 519 U.S. at 350). And in several cases, the Supreme Court has concluded that the presumption is rebutted. We turn to those cases.

*Arellano*, 143 S. Ct. at 546, involved an application for veterans disability benefits. The statutory scheme provided that the effective date of an award for benefits would not be earlier than the day the Department of Veterans Affairs (VA) receives the veteran's application. The statutory scheme provided 16 exceptions, one of which was if the VA received the application within one year of discharge. *Id.* A

unanimous Supreme Court held that there was "very good reason" to conclude that the presumption of equitable tolling was rebutted. *Id.* at 548. It held that equitable tolling was "incongruent with the statutory scheme." *Id.* at 551.

Like the deadline in *Arellano*, TEFRA includes various provisions intended to account for people who might be unable to file a timely petition. As previously discussed, a partner who is in bankruptcy is removed from the proceeding and thus not subject to the petition deadline. I.R.C. §§ 6226(d), 6231(b); Treas. Reg. § 301.6231(c)-7. Likewise, a partner who does not receive timely notice may choose whether to be bound by a TEFRA proceeding or to proceed independently. I.R.C. § 6223(e). And Congress amended TEFRA to address the inequitable situation of a premature petition. I.R.C. § 6226(b)(5). Perhaps most compelling, however, is that, as in *Arellano*, equitably tolling the TEFRA petition deadline would be fundamentally incongruent with the statutory scheme. *See supra* Part V.E. As detailed above, it would upend the entire assessment process that TEFRA was intended to streamline.

*Brockamp*, 519 U.S. at 348, involved the deadline within which to file a claim for a refund of taxes. In two cases consolidated before the Supreme Court, the taxpayers presented circumstances that interfered with their ability to file timely claims for refund. *Id.* Without addressing whether an untimely claim presented a jurisdictional bar, the Supreme Court unanimously held that the deadline to file such a claim nonetheless was not subject to equitable tolling. *Id.* at 354. In so holding, the Supreme Court focused on the "detail" of the section at issue, "its technical language," and "the explicit listing of exceptions." *Id.* at 352. The Supreme Court also looked to the interplay of the deadline to file a claim with other provisions of the Code. *Id.* at 350–53. It observed that tax law "is not normally characterized by case-specific exceptions reflecting individualized equities." *Id.* at 352.

Like the deadline at issue in *Brockamp*, the section 6226 petition deadline is highly detailed. It likewise contains explicit exceptions. But even more so than the statute at issue in *Brockamp*, the interplay between the TEFRA petition deadline and the entire flow of events leading to assessment counsels against finding that equitable tolling can apply. *See supra* Part V.E.2.

*Auburn Regional Medical Center*, 568 U.S. at 148–49, involved the question of whether the deadline for a healthcare provider to

administratively appeal an initial determination of reimbursement under Medicare was jurisdictional, and as a secondary question, whether that deadline was subject to equitable tolling. Although it found the deadline not to be jurisdictional, a unanimous Supreme Court also found that equitable tolling did not apply. The Supreme Court observed that, since the relevant statute was enacted, no court had ever held that equitable tolling applied and at no time did Congress ever express disapproval of how the agency interpreted and applied the deadline. *Id.* at 149.

Like the deadline at issue in *Auburn Regional Medical Center*, the TEFRA petition deadline has never been found to be subject to equitable tolling in the more than 40 years TEFRA has been in effect.[12] And Congress was well aware of courts treating the section 6226 petition deadlines as jurisdictional. *See supra* Part V.C. Yet Congress created only isolated exceptions to the petition deadlines. *See, e.g.*, I.R.C. § 6226(b)(5).

Three courts of appeals have recently held that the deadline by which to file a petition in a deficiency case is not jurisdictional. *See Oquendo v. Commissioner*, 148 F.4th 820 (6th Cir. 2025); *Buller v. Commissioner*, No. 24-1557 (2d Cir. Aug. 14, 2025); *Culp v. Commissioner*, 75 F.4th 196 (3d Cir. 2023). In each case the respective court went on to conclude that the period within which to file a petition in a deficiency case can be equitably tolled. The rationales relied upon by the U.S. Courts of Appeals for the Third and Second Circuits, however, reinforce why the TEFRA petition deadlines do not leave room for equitable tolling.[13]

The Third Circuit's analysis in *Culp* is particularly instructive. To determine whether equitable tolling applied, the court began with a question: "[W]e ask whether there is 'good reason to believe that Congress did *not* want the equitable tolling doctrine to apply.'" *Culp v. Commissioner*, 75 F.4th at 203 (quoting *Arellano*, 143 S. Ct. at 548). The court then looked to the text of the statute, explaining that if the

---

[12] Although TEFRA has been repealed for partnership taxable years beginning after December 31, 2017, the petition deadline of section 6226 remains in effect for any partnership taxable years beginning before that date. *See supra* note 1.

[13] In *Oquendo v. Commissioner*, 148 F.4th at 833–34, the U.S. Court of Appeals for the Sixth Circuit remanded the question of equitable tolling applied on the facts of that case after concluding that the petition deadline in section 6213 is not jurisdictional.

deadlines are set forth in a highly detailed technical manner, they cannot easily be read as containing implicit exceptions. *Id.* (citing *Brockamp*, 519 U.S. at 350). And the court went on to observe that "when a legislature lays out an 'explicit listing of exceptions' to a deadline, it shows its intent for 'courts [not to] read other unmentioned, open-ended, 'equitable' exceptions into the statute.'" *Id.* (quoting *Brockamp*, 519 U.S. at 352).

The TEFRA petition deadlines provide an example of precisely the circumstances the Third Circuit described. The petition deadlines are highly technical and contain exceptions so that, where circumstances might require flexibility, that flexibility does not interfere with the TEFRA proceeding. To begin, only the TMP can file a petition for the first 90 days after an FPAA is issued. I.R.C. § 6226(a). A notice partner's right to file a petition arises only if the TMP does not file one. I.R.C. § 6226(b). A premature petition by a notice partner is treated as having been filed at the end of the notice partner petition period, but only if no other valid petition is filed. I.R.C. § 6226(b)(5). If the Commissioner fails to provide proper notice, special rights arise that can remove the partner from the TEFRA proceeding so as not to disrupt the unified proceeding that binds all other partners. I.R.C. § 6223(e). And the bankruptcy of a partner removes that partner from the proceeding so that a bankruptcy stay does not affect the TEFRA proceeding or its deadlines. I.R.C. §§ 6226(d), 6231(b); Treas. Reg. § 301.6231(c)-7. These highly technical deadlines cannot easily be read to allow for implicit exceptions.

The Second Circuit's rationale in *Buller* also counsels against finding equitable tolling. The Second Circuit characterized the deficiency petition deadline of section 6213 as appearing "in a section of the Tax Code that is unusually protective of taxpayers." *Buller*, slip op. at 12 (quoting *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500). In contrast the very design of TEFRA removes a partner's unique circumstances from the partnership-level proceeding. The entire statutory scheme is designed to determine items at the partnership level. I.R.C. § 6221 ("The tax treatment of any partnership item . . . shall be determined at the partnership level."). This scheme replaced the prior system, where each partner's unique circumstances placed a burden on administrative and judicial resources. As described by the Second Circuit:

Prior to 1982 adjustments of partnership items were determined at the individual partners' level, resulting in

duplication of administrative and judicial resources and inconsistent results between partners.

To solve this problem, Congress enacted [TEFRA], which created a single unified procedure for determining the tax treatment of all partnership items at the partnership level.

*Randell v. United States*, 64 F.3d 101, 103 (2d Cir. 1995). TEFRA was intended to unify partnership-level proceedings rather than to focus on the specifics of any one partner. *See* H.R. Rep. No. 97-760, at 600 ("Under the conference agreement, the tax treatment of items of partnership income, loss, deductions, and credits will be determined at the partnership level in a unified partnership proceeding rather than in separate proceedings with the partners."). These provisions were not intended to be "unusually protective of taxpayers"; they were intended to look beyond the circumstances of specific partners and to provide a single unified proceeding.

"Whether a rule precludes equitable tolling turns not on its jurisdictional character but rather on whether the text of the rule leaves room for such flexibility." *Nutraceutical*, 586 U.S. at 192. In evaluating that text, we look not just to the wording of the deadline itself, but also to the interplay of that deadline with related provisions of the Code, and Congress's action (or inaction) with respect to the relevant provision. All of these factors weigh against equitable tolling.

VII.    *Conclusion*

Section 6226(b) sets forth a 150-day deadline within which to file a petition seeking readjustment of adjustments in an FPAA. The text, context, and historical treatment of that provision indicate that the 150-day deadline is jurisdictional. In addition, in the broader context of the TEFRA provisions, their complexity leaves no room for equitable tolling. Because the Petition underlying this case was filed more than 150 days after the FPAA was mailed to the TMP, it is untimely. In accordance with the foregoing, the Commissioner's Motion to Dismiss for Lack of Jurisdiction will be granted.

To reflect the foregoing,

*An appropriate order and decision will be entered.*

Reviewed by the Court.

KERRIGAN, NEGA, PUGH, ASHFORD, COPELAND, GREAVES, WAY, ARBEIT, GUIDER, and JENKINS, *JJ.*, agree with this opinion of the Court, and URDA, *C.J.*, and JONES, TORO, and MARSHALL, *JJ.*, agree with Part VI of this opinion of the Court.

WEILER, LANDY, and FUNG, *JJ.*, concur in the result.

MARSHALL, *J.*, concurs in part and dissents in part.

TORO, *J.*, with whom URDA, *C.J.*, and PUGH, *J.*, join, concurring in the result:  For the reasons stated in Part VI of the opinion of the Court, I agree that this case should be dismissed.  *Cf. Matar v. Transp. Sec. Admin.*, 910 F.3d 538, 541 (D.C. Cir. 2018) (dismissing an untimely petition without addressing a jurisdictional challenge (standing) and explaining that the "rule of priority" set out in *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), "does not invariably require considering a jurisdictional question before *any* nonjurisdictional issue" and that "courts may address certain nonjurisdictional, threshold issues so long as those issues can occasion a dismissal short of reaching the merits" (cleaned up) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007), and *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 513 (D.C. Cir. 2018))); *Whistleblower 21276-13W v. Commissioner*, 155 T.C. 21, 27 n.7 (2020) (reviewed) (noting the same principle, but finding it inapplicable on the facts before the Court).

WEILER, *J.*, concurring in the result: Petitioner makes a strong legal argument as to why equitable tolling should be applied in a TEFRA partnership proceeding, post *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493 (2022). However, petitioner has presented no evidence—and is utterly silent—as to why it would be eligible for such relief in this case.

Most recently we chose to reaffirm our holding that the 90-day deadline for filing a petition with this Court in deficiency cases is jurisdictional. *See Sanders v. Commissioner*, 161 T.C. 112, 120 (2023) (Foley and Weiler, JJ., dissenting). However, since *Boechler*, those courts of appeals considering the issue have reversed this Court, directing our application of equitable tolling. *See Oquendo v. Commissioner*, 148 F.4th 820 (6th Cir. 2025); *Buller v. Commissioner*, No. 24-1557 (2d Cir. Aug. 14, 2025); *Culp v. Commissioner*, 75 F.4th 196 (3d Cir. 2023). Two decisions could be considered a coincidence, but three clearly creates a pattern.[1] Contrary to the opinion of the Court, I find petitioner's legal argument compelling and would heed the Supreme Court's recent edict by considering equitable tolling in this case.

The Supreme Court has said a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two distinct elements: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The first prong of the Supreme Court's test requires a taxpayer to exercise reasonable diligence to ensure the timeliness of his petition. *Id.* at 653. The second prong of this test is met where the circumstances that caused a taxpayer's delay are extraordinary and beyond her control. *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016). Moreover, we are instructed to apply equitable tolling sparingly. *See Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)

With the foregoing in mind, I find petitioner has failed to establish potential grounds for equitable tolling. Therefore, this case is ultimately due to be dismissed. However, it would not be for lack of jurisdiction, but for petitioner's failure to state a claim upon which relief may be granted.

---

[1] I anticipate that the U.S. Court of Appeals for the Eleventh Circuit, where appeal of this case would presumably lie, would not view the text of section 6226 differently from that of section 6213, since the text used by Congress in both Code sections is similar.

MARSHALL, *J.*, concurring in part and dissenting in part: I join Part VI of the opinion of the Court, which holds that equitable tolling is not available to toll the petition deadlines in section 6226. I agree with Judge Weiler, however, that a compelling post-*Boechler* pattern has been established by *Oquendo v. Commissioner*, 148 F.4th 820 (6th Cir. 2025), *Buller v. Commissioner*, No. 24-1557 (2d Cir. Aug. 14, 2025), and *Culp v. Commissioner*, 75 F.4th 196, 202 (3d Cir. 2023), and I would dismiss petitioner's case for failure to state a claim upon which relief may be granted rather than for lack of jurisdiction. *See* § 6226(h).